## COOK v. HAGER.

1. A chattel mortgage to be valid must be executed, acknowledged and recorded in conformity to the statutes (R. S., p..103; Laws 1874, p. 196). A non-resident, whether natural or artificial, is not within the terms of the statutes, and a chattel mortgage executed by such person can have no validity.

2. A foreign corporation does not become a domestic corporation by complying with the laws of this State, in pursuance of which a foreign corporation may do business here without liability attaching to the officers, agents and stockholders, upon the contracts of the company made before such compliance.

*Appeal from District Court of Arapahoe County.*

THIS was an action of replevin brought by Hager, the appellee, against Cook, sheriff, to recover certain chattels

claimed by Hager, under a chattel mortgage from the Cheyenne, Boulder and Denver Telegraph Company, a foreign corporation. Among the pleas interposed by the defendant below, was one justifying the taking of the property as sheriff, under the authority of a writ of attachment issued by the probate court of Arapahoe county, in the case of *H. C. Donnell* v. *The Cheyenne, Boulder and Denver Telegraph Company.* On the trial had by the court, on the 17th day of October, A. D. 1876, the court found the defendant guilty—and that the property mentioned in the declaration was the property of the plaintiff, and gave judgment accordingly. A motion for a new trial having been interposed and overruled, the defendant appealed.

Mr. JOHN W. BLACKBURN, for appellant.

Messrs. PATTERSON & CAMPBELL, for appellee.

THATCHER, C. J. Section two of chapter XIV, concerning chattel mortgages (R. S., p. 103), provides that "any mortgagor of personal property may acknowledge such mortgage before any justice of the peace, in the justice's district in which he may *reside*." By section eight of an act approved February 13th, 1874 (Sess. Laws 1874, p. 196), it is further provided that any mortgagor of personal property, *residing* in any township in which is located the county seat of any county, may acknowledge such mortgage before any justice of the peace, notary public, or county clerk of the county in which he may reside. The mortgage in question was acknowledged in the county of Arapahoe, before Charles W. Wright, a notary public. The parties stipulate in their agreed statement of facts, that the Cheyenne, Boulder and Denver Telegraph Company, the mortgagor, is a *foreign* corporation, but that it had complied with all the requirements of the laws of Colorado, which enable it to do business as a corporation here, and that one of its principal places of business is in Denver, Arapahoe county. By comity existing between nations

and States, independent of statute, a corporation of one jurisdiction may transact business in another, not requiring official corporate action, but the corporation nevertheless dwells in the State of its creation.

Can it be said that this foreign corporation resides in Arapahoe county ? The law of the Territory creating it can have no direct extra-territorial force. A corporation can have no existence except by courtesy, beyond the limits of the sovereignty which brings it into life and endues it with its faculties. It is a subject of the government of the country creating it, where it must dwell, and it cannot migrate to another sovereignty. Angell & Ames on Corp., § 103 *et seq.*, and cases there cited ; *Blackstone Mfg. Co.* v. *Inhabitants of Blackstone*, 13 Gray, 489. In the last case Chief Justice SHAW says : "It appears to us that the law of domicile affords a very good analogy, if not a test, in making the distinction between a domestic and a foreign corporation. Every man must have some domicile, and no man can have more than one domicile. It may often be difficult to determine, on a complicated state of facts, where one's domicile is ; yet when fixed, it determines, to a great extent, his civil and social rights and responsibilities. If there were no distinction between a domestic and foreign corporation, it would be equivalent to saying that a body, when it is once invested with the power of a corporation in one State, has an equal standing in all others; or in other words, it has no domicile anywhere, either of which would lead to extraordinary, not to say absurd consequences." Again he says in the same opinion : "In any other State than that of its creation, though its existence may be recognized, and its rights protected to a limited extent, it is by the law of courtesy adopted and acted upon as the law of nations amongst civilized communities." Nor does this doctrine as we view it militate against the idea that a corporation may, under certain conceivable exceptional circumstances, as where the source of its life and power is distinctly traceable to two sovereignties instead of one, have a legal existence in both sovereignties. In such case its existence may be

co-extensive with the sovereignties which spoke it into being. It may be conceded, in obedience to the general doctrine here enunciated, that if a consolidated company derives its corporate powers from the legislatures of two States, as where several railroad companies, each owning a line in contiguous territorial jurisdictions, and each having been duly chartered by the legislature of its appropriate jurisdiction, such company may be for certain purposes treated as a domestic corporation of each State from which it derived its being. This is the extent to which the *State* v. *Northern Central R. W. Co.*, 18 Md. 193, upon which the appellee largely relies, goes.

In such case the corporation exists in both States, not by the law of courtesy, but by virtue of a charter granted by each State. The legal status of the mortgagor in Colorado, in the case before us, is widely variant from the case supposed. The mortgagor, it is agreed, is not a domestic corporation, unless a foreign corporation becomes a domestic one by complying with the laws of this State in pursuance of which a foreign corporation may do business here without individual liability attaching to the officers, agents and stockholders upon the contracts of the company made before such compliance. R. S. 150, Art. III, §§ 1, 2 and 3. It has been decided in England that a foreign railway corporation may be required to give security for costs as a non-resident plaintiff. *Kilkenny R. W. Co.* v. *Fielden*, 2 Eng. Law & Eq. R. 388 ; *Limerick & Waterford R. R. Co.* v. *Fraser*, 4 Bing. 394. By comity a foreign corporation, without conforming to the statute just referred to, may carry on business here, but a penalty in such case may be inflicted upon the officers, agents and stockholders. This statute has nothing to do with the *situs* of the company.

Its residence, so far as residence may be predicated of a corporation, still remained within the territorial jurisdiction of the law-making power to which it owed its existence.

The statute authorizing chattel mortgages is in derogation of the common law and must, therefore, be strictly construed. *Porter* v. *Dement*, 35 Ill. 480.

A mortgage to be valid must be executed, acknowledged and recorded in conformity to the statute. As a non-resident person, whether natural or artificial, is not within its terms, a mortgage executed by such person can have no validity.

The judgment must be reversed and cause remanded for further proceedings according to law.

*Reversed.*